**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

| | | |
|---|---|---|
| **TASHMA MCFADDEN # 337321** | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Action No. WDQ 08-154 |
| | * | |
| **CORRECTIONAL OFFICER ANTONIA ALLISON, in her individual and official capacities,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tashma McFadden, by and through undersigned counsel, submits this Opposition to Defendant's Motion for Summary Judgment (the "Motion"), and states as follows:

### I.  Introduction

Defendant has filed the Motion seeking judgment in her favor on Plaintiff's Second Amended Complaint (the "Complaint"), which alleges that Defendant, a correctional officer and "Bloods" gang member, violated Plaintiff's constitutional rights while Plaintiff was under the care and protection of the Baltimore City Detention Center (the "BCDC") in July 2006. As set forth below, summary judgment is inappropriate in this case because there are material facts in dispute relating to the Defendant's culpability for orchestrating a brutal attack on Plaintiff while she was a correctional officer at the BCDC. Moreover, Defendant is not entitled to the entry of judgment as a matter of law because Plaintiff has adequately pled claims in the Complaint.

## II. Background

Plaintiff's claims arise from the planned beating and stabbing of Plaintiff on July 5, 2006 by alleged gang-member inmates, all of which was orchestrated by Defendant Correctional Officer Antonia Allison while Plaintiff was a pre-trial detainee at the BCDC. *See* Second Amended Complaint ("Complaint") at ¶¶ 10-12. Specifically, as acknowledged by Defendant in her Memorandum of Law in Support of the Motion (the "Memorandum"):

> On July 4, 2006, McFadden and CO Allison had a verbal exchange. (Co Allison's Deposition 42:8-11, 44:5-8, McFadden's Deposition 20:4-6. Exhibit 3) After the exchange, CO Allison simply "walked away". (Co Allison's Deposition 46:6, McFadden's Deposition 25:1-3).
> The next day, July 5, 2006, CO Allison was on relief duty, which required her to relieve other officers at their stations when they went on their thirty-minute meal breaks. (CO Allison's Deposition 58:7-12.) She also had a trainee officer, CO Tynisha Crew (then named Berman) shadowing her that entire day. (CO Allison's Deposition 57:7-13, 58:21-22, 59:8-12; CO Crew's Deposition 4:17-18, 43:20-22, 46:13-20 Exhibit 4.) At around 6:39 p.m. Cos Allison and Crew relieved CO Butler from his post on the O Tier so that he could take his 30-minute break. (CO Allison's Deposition 60L15-17, Co Crew's Deposition 47:1-21.)
> As soon as Cos Allison and Crew assumed the post on the O tier, they made rounds together to make sure that all inmates were where they were supposed to be. At that time, the top tier was out of their cells for recreation and the bottom tier was locked in their cells. (CO Allison's Deposition 61:12-22, 65:19-21, CO Crew's Deposition 50:20-22, 51:1-3.)

Memorandum at p. 4. What Defendant not surprisingly, but disingenuously, omits from her recitation of the factual background are the very facts that support Plaintiff's claim. These facts are set forth in greater detail in section IV(b), below.

These facts explain how, on the evening of July 5, 2006, Defendant, while in control of the "O" housing unit, the housing unit on which Plaintiff was being detained, purposefully caused Plaintiff's cell door to be opened so that a number of unidentified and armed BCDC inmates could enter Plaintiff's cell to attack him. Complaint at ¶¶ 11-17; Deposition of Tashma

McFadden, attached hereto as **Exhibit 1**, at pp. 42-45.[1] The attack is believed to have been in retribution for the verbal exchange between Defendant and Plaintiff that occurred the previous evening. *See* Complaint at ¶ 18.

As a result of the attack, Plaintiff suffered severe injuries, including numerous stab wounds to his back, torso and face. Complaint at ¶ 17; **Exhibit 1** at pp. 56-57. Despite orchestrating and causing the attack, Defendant did not request or provide medical treatment for Plaintiff, notwithstanding her knowledge that Plaintiff needed such medical treatment. *See Complaint* at ¶ 23; **Exhibit 1** at pp. 56-58.

The Complaint alleges that Defendant's actions were neither necessary nor reasonable, and were committed with a willful, wanton and deliberate intent to punish Plaintiff without having been convicted of a crime. Complaint at ¶¶ 24, 28 and 30. Moreover, the Complaint alleges that Defendant knew, or should have known, that her actions were illegal. *Id*. at ¶ 25. Despite these allegations, which are supported by the facts adduced during the course of discovery, Defendant posits, incorrectly, that Plaintiff has failed to plead a cause of action.

### III. Standard of Review

Summary judgment may be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; s*ee also Provident Life & Accident Ins. Co. v. Cohen*, 193 F. Supp. 2d 845, 847 (D. Md. 2002). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact and providing the Court with sufficient grounds for summary judgment. In ruling on a motion for summary judgment, the court must view the facts, including all reasonable inferences drawn therefrom, in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

---

[1] Plaintiff's cell was located in the "bottom tier", *see* **Exhibit 1** at p. 46, and thus, there is no dispute that he was locked in his cell at the time Defendant assumed control of the "O" housing unit.

477 U.S. 242, 255 (1986); *Provident Life & Accident Ins. Co.*, 193 F. Supp. 2d at 847. If there is a conflict between the inferences that may be drawn from the evidence presented to the Court, summary judgment must be denied. *PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 870-71 (D. Md. 1994); *see also Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979) (stating that summary judgment is inappropriate if the parties disagree on the inferences to be drawn from the facts).

## IV. Argument

### a. Plaintiff has sufficiently alleged a claim against Defendant based upon the Fourteenth Amendment of the United States Constitution.

As a pre-trial detainee, Plaintiff's constitutional rights are protected by the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).[2] "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. To determine whether a detainee's Due Process Rights have been violated, a "court must decide whether [a] disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538. "Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination will generally turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id*. "[I]f a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees. . . ." *Id*. Further, it has

---

[2] Plaintiff does not dispute that the due process protections of the Fifth Amendment are only applicable to the federal government. Plaintiff's due process rights in the present case, however, are undeniably protected by the Fourteenth Amendment, which applies specifically to the states.

- 4 -

been said that "the due process rights of [a pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (citation omitted).[3]

Defendant contends that Plaintiff's Fourteenth Amendment claim should be dismissed because Plaintiff failed to delineate whether Plaintiff's substantive or procedural rights were violated. Memorandum at p. 8. Defendant also seems to suggest that Plaintiff failed to demonstrate that any Fourteenth Amendment right was violated. Memorandum at p. 7. Plaintiff's Complaint, however, clearly alleges that Defendant violated Plaintiff's substantive rights by punishing him (*i.e.*, orchestrating the attack) while Plaintiff was a pre-trial detainee and failing to provide medical treatment even though Defendant knew Plaintiff was in need of such treatment. Complaint at ¶ 12-13, 23, 30-31. The Complaint sets forth in detail the facts that led to the attack, the circumstances of the attack, and the conduct of the parties after the attack. Moreover, Plaintiff has alleged that Defendant's actions were undertaken without any legitimate purpose or goal, but rather with the intent to purposely, wantonly and maliciously punish Plaintiff. Complaint at ¶¶ 24, 28, 30. In sum, Defendant's actions, motivations, and the resulting harm, which together violated Plaintiff's substantive due process rights, are all alleged clearly and specifically.

Further, to support a cause of action under Section 1983 for the violation of one's substantive due process rights, the claim must only be based upon an explicit or judicially recognized implicit substantive constitutional right, such as the Eighth Amendment right to be

---

[3] The Eighth Amendment forbids "cruel and unusual punishment" of prisoners. This prohibition includes protection from a guard's use of force when it is not applied in a "good faith effort to maintain or restore discipline" but instead to "maliciously and sadistically cause harm." *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992). The Eighth Amendment also protects prisoners from the deliberate indifference to their serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

free from cruel and unusual punishment. *See Lamoureux v. Haight*, 648 F.Supp. 1169, 1175 (D.Mass. 1986). Here, Plaintiff's claim arises from an explicitly recognized substantive right, the Eighth Amendment protection from cruel and unusual punishment, and Defendant is undeniably on notice of the allegations of specific conduct. Contrary to Defendant's contention, she is not left to guess about the circumstances of the lawsuit. As such, Defendant's argument that Plaintiff has failed to clearly or adequately plead a violation of his due process rights is entirely misplaced.

>   **b. The facts alleged in the Second Amended Complaint and supported by evidence obtained during discovery support Plaintiff's claim and denial of Defendant's Motion.**

Defendant contends that the facts alleged in the Second Amended Complaint and supported during the course of discovery are insufficient to maintain a claim under Section 1983. Defendant's argument appears to take three forms. First, Defendant attempts to preclude Plaintiff from pursing this action because Plaintiff did not *personally witness* Defendant open his cell door from the control room to allow the attack. Memorandum at p. 9. Second, Defendant argues that Plaintiff's "only witness Dashawn Kearson . . . cannot establish that CO Allison had anything to do with causing McFadden's cell door to open." *Id*. at 10. Third, Defendant alleges that "the facts show that CO Allison did not have control of the keys to the lock box during the time that she and CO Crew relieved CO Butler." *Id*. All three arguments wholly lack merit and are expressly contradicted by the facts in this case. Therefore, a material dispute of facts exists, and summary judgment is not appropriate.

First, Plaintiff cannot be precluded from bringing an action simply because the perpetrator was successful in avoiding an eyewitness to her wrongful conduct. Plaintiff has testified under oath that Dashawn Kearson, another BCDC inmate detained in the same housing

unit as Plaintiff at the time of the attack, told Plaintiff that Defendant had assumed control of the BCDC housing unit on which they resided shortly before the attack occurred. *See* **Exhibit 1** at pp. 44, 47.[4] Plaintiff also testified that, following the attack, he was helped by Mr. Kearson and another inmate to the shower area so that he could wash the blood off his body and that, while in the shower area, he witnessed Defendant in the control area where the lock boxes, which are the electronic devices that remotely control the opening of cell doors, are located. *Id*. at pp. 56-57. Moreover, Mr. Kearson corroborated this testimony, stating that he carried Plaintiff to the shower after Plaintiff was attacked, and that Officer Butler, the officer that Defendant had relieved, did not return to the "O" housing unit until after the attack on Plaintiff. *See* Deposition Testimony of Dashawn Kearson, attached hereto as **Exhibit 2**, at pp. 20, 28-29. Considering the fact that most BCDC inmates, which when confined in their cells are unable to see the control area where the lock boxes are located, Defendant's argument that Plaintiff cannot state a cause of action simply because he was unable to *personally witness* Defendant open his cell door means that no litigant would ever be able to successfully state a cause of action unless such litigant physically saw the wrongdoer cause the harm. Such a result is nonsensical. These facts and their reasonable inferences create a material dispute of fact appropriate for resolution by a fact finder at trial and not on a motion for summary judgment.

Second, Defendant's contention that Mr. Kearson "cannot establish that CO Allison had anything to do with causing McFadden's cell door to open" is belied by Mr. Kearson's own deposition testimony. Indeed, during his deposition, Mr. Kearson testified that he was a BCDC inmate on the same housing unit as Plaintiff at the time of the attack. *See* **Exhibit 2** at pp. 12-13, 28. Mr. Kearson was a "worker" on the "O" housing unit and was not confined to his cell at the

---

[4] As explained in the next paragraph, Mr. Kearson was able to see Defendant assume control of the "O" housing unit because he was a "worker" on the housing unit and was not confined to his cell at the time Defendant assumed control of the housing unit.

time of the attack. *Id*. at pp. 11-12. Mr. Kearson witnessed Defendant relieve Correctional Officer Butler, the officer in charge of the "O" housing unit on the evening of the attack, for a break and take control of the "O" housing unit shortly before the attack on Plaintiff occurred. *Id.* at p. 18. Mr. Kearson also testified that the Defendant was in control of the tier at the time of the attack on Plaintiff. *Id*. at p 29. Considering this testimony, Defendant's contention that Mr. Kearson cannot establish any link between Defendant and the attack on Plaintiff is specious.

Defendant's third factual argument relates to the keys that allow access to the lock box on the "O" housing unit. Citing the deposition testimony of Correctional Officer Tynisha Crew,[5] Defendant argues that "the facts show that CO Allison did not have control of the keys during the time that she and CO Crew relieved CO Butler." Motion at p. 10. Defendant fails to mention, however, that CO Crew testified that the keys "would go between me and Officer Allison" while Defendant and Correctional Officer Crew were in control of the "O" housing unit because Defendant "was the one with the key clip. . . ." **Exhibit 3** at pp. 72-73.

Defendant also argues that the keys for the lock boxes on the "N" housing unit were interchangeable with the keys for the lock boxes on the "O" housing unit and that "COs often operate lock boxes for a tier adjacent to the one they are assigned to." Motion at p. 10. This argument does not support the Motion for at least two reasons. First, the testimony regarding whether the keys were interchangeable at the time of the attack was not consistent. *See* **Exhibit 3** at pp. 80-81 (keys interchangeable); Deposition Testimony of Santiago Morales, attached hereto as **Exhibit 4**, at pp. 99-101 (keys for housing unit doors interchangeable but not for lock boxes). Second, both Defendant and Correctional Officer Crew testified that they were the only officers in the control area where the lock boxes for the "O" housing unit were located during the

---

[5] On the evening of the attack, Correctional Officer Crew was a trainee and was shadowing Defendant. *See* Deposition Testimony of Tynisha Crew, attached hereto as **Exhibit 3**, at pp. 45-46.

relevant time period, the time when they relieved Correctional Officer Butler. *See* Deposition Testimony of Antonia Allison, attached hereto as **Exhibit 5**, at p. 62; **Exhibit 3** at pp. 54-55, 82-83. Correctional Officer Crew also testified that the correctional officer assigned to the "N" housing unit at the time Defendant was in charge of the "O" housing unit never came to the control area on the "O" housing unit while she and Defendant were there. *See* **Exhibit 3** at p. 50. Indeed, both the Defendant and CO Crew testified that they were the only individuals that could have opened Plaintiff's cell door during the relevant period. *See* **Exhibit 5** at pp. 67-68; **Exhibit 3** at p. 74.

In sum, Defendant's argument that the facts alleged and discovered do not support a section 1983 claim is wholly without merit as the allegations contained in the Complaint and the facts as known provide more than enough evidence to support a claim against Defendant.

### c. Plaintiff has adequately pled an unconstitutional denial of medical care on the part of Defendant.

Defendant next attempts to escape liability by arguing that Plaintiff's claim for denial of medical treatment is flawed. To state a claim for denial of medical care under the Eighth Amendment, however, a prisoner need only show that: (i) the prisoner had a serious medical need; (ii) prison officials showed "deliberate indifference" to that serious need; and (iii) the deliberate indifference caused the prisoner's injury. *See Estelle*, *supra*, 429 U.S. at 104-06. Serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment *or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.*" *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (emphasis added). Moreover, to prove deliberate indifference, a prisoner must show that (1) prison officials knew of the prisoner's serious medical need and (2) failed to respond reasonably to it. *Estelle*, 429 U.S. at 104-06. As noted above, however, because

Plaintiff was a pre-trial detainee at the time of the attack, Plaintiff is not protected by the Eighth Amendment prohibition on cruel and unusual punishment, but rather by the Due Process Clause found in the Fourteenth Amendment. Nonetheless, because a pre-trial detainees' due process rights have been interpreted as being as least as broad as a prisoner's Eighth Amendment rights, *see City of Revere*, *supra*, 463 U.S. at 244, the above Eighth Amendment standard for denial of medical care provides guidance as to what would constitute a violation of Plaintiff's Fourteenth Amendment rights.

Here, Plaintiff has alleged that he had a serious medical need that was not only caused by Defendant, but also ignored by Defendant. *See* Complaint at ¶¶ 11-13, 23. As set forth in the Complaint, Plaintiff suffered multiple stab wounds as a result of the attack orchestrated by Defendant. *Id*. at ¶ 17. The wounds caused significant blood loss. **Exhibit 1** at p. 56. Moreover, Plaintiff has alleged, and the facts indicate, that Defendant showed "deliberate indifference" to Plaintiff's serious medical need by failing to request or provide treatment to Plaintiff after she knew of the resulting injuries from the attack. Complaint at ¶ 23. Indeed, as noted above, there is evidence that Plaintiff's medical needs were "apparent" to Defendant – Plaintiff testified that he saw Defendant in the control room for the "O" housing unit shortly after the attack while he was in the shower attending to his wounds. *See* **Exhibit 1** at pp. 56-57. Moreover, Defendant would have a clear view of Plaintiff while he was in the shower cleaning. *See* **Exhibit 5** at p. 32.[6]

Defendant makes much ado that Plaintiff did not report his injuries to Defendant or another correctional officer sooner. *See* Memorandum at p. 12. Considering that Defendant was

---

[6] Of note, the inmates on the lower tier of the "O" housing unit (the tier on which Plaintiff was located) were locked in their cells at the time of their attack on Plaintiff. Plaintiff, however, was able to use shower to clean his wounds – something that could only have been accomplished if Defendant had opened Plaintiff's cell door.

responsible for causing Plaintiff's injuries, it is not unreasonable that Plaintiff did not specifically seek medical treatment from the very officer that was responsible for his injuries. *See* **Exhibit 1** at p. 58. Moreover, Plaintiff was not unreasonable in not reporting his injuries to a BCDC correctional officer sooner in light of the pronounced gang infiltration of the ranks of correctional officers at the BCDC. *See* **Exhibit 4** at pp. 39-40, 79-82;[7] **Exhibit 5** at pp. 48-54; Morales November 22, 2006 Memorandum to Warden Filbert, attached hereto as **Exhibit 6**. Plaintiff's decision not to report his injuries sooner does not relieve Defendant of her responsibility to provide treatment to Plaintiff in light of her knowledge of those injuries. In light of the foregoing, Plaintiff has adequately pled a cause of action relating to Defendant's failure to provide medical treatment.

### d. Defendant is not entitled to qualified immunity.

Defendant argues that she is entitled to summary judgment on the basis of qualified immunity solely with respect to Plaintiff's claim that he did not receive medical attention. Memorandum at pp. 13-14. Specifically, Defendant contends that "because CO Allison did not know that McFadden was attacked let alone that he was injured, and because McFadden did not inform CO Allison of his injuries, CO Allison is entitled to summary judgment on the basis of qualified immunity a to McFadden's claim that he did not receive medical attention." *Id*. at 14. Foremost, there is a dispute of material facts as to whether Defendant knew that Plaintiff was attacked and injured, which in turn gives rise to a dispute of material fact regarding Defendant's knowledge that Plaintiff required medical care. As set forth above, substantial facts indicate that Defendant actually caused the attack on Plaintiff and thus, had knowledge of his injuries. Moreover, Plaintiff has testified that he saw Defendant in the control room of the "O" housing

---

[7] In accordance with an oral agreement with counsel for Defendant, Plaintiff has redacted the names of two confidential informants on page 79 of the Morales Deposition Transcript.

unit while he was in the shower cleaning his wounds, *see* **Exhibit 1** at pp. 56-57, and Defendant testified that from the control room a correctional officer can see into the shower area. *See* **Exhibit 5** at p. 32. These facts demonstrate that Defendant knew of Plaintiff's injuries, despite her current denial. As such, there is a dispute as to material fact that would preclude summary judgment on this issue.

Furthermore, qualified immunity is not appropriate in this instance. Qualified immunity does not apply when a detainee's rights were violated, the right violated was clearly established, and *when the defendant was personally responsible for the violation of that right*. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Here, Plaintiff has alleged that his due process rights were violated, which Constitutional rights were clearly established as of July 2006, when the attack occurred, and which were caused by and known to Defendant. Consequently, Defendant is not entitled to qualified immunity.

For all of the foregoing reasons, including the existence of adequately pled claims and material disputes of fact with respect to all of Defendant's purported grounds for summary judgment, resolution of this case by way of summary judgment is not consistent with controlling and applicable law. Accordingly, Defendant's Motion should be denied.

Respectfully submitted,

 /s/ Aaron L. Casagrande
Aaron L. Casagrande, Bar No. 28518
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202
acasagrande@wtplaw.com
410-347-8700

## CERTIFICATE OF SERVICE

I certify that on this 17th day of August, 2009, a copy of the foregoing was served electronically and by first-class mail, postage prepaid, to:

> Beverly F. Hughes, Esquire
> Assistant Attorney General
> Department of Public Safety and Correctional Services
> 6776 Reisterstown Road, Suite 313
> Baltimore, Maryland 21215

>>  /s/ Aaron L. Casagrande
>> Aaron L. Casagrande

*1864580*