IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| TASHMA MCFADDEN #337321 | * | |
| Plaintiff, | * | |
| | * | Civil Action No. WDQ 08-154 |
| v. | * | |
| ANTONIA ALLISON, CO II | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN REPLY
TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Correctional Officer Antonia Allison ("CO Allison"), by her undersigned attorneys, submit this Memorandum in Reply to Plaintiff's Opposition to her Motion for Summary Judgment, and as further reasoning and authority in support of her Motion, state:

**I.     Introduction:**

In his Opposition, McFadden states that his "Second Amended Complaint alleges that Defendant, a correctional officer and "Bloods" gang member, violated Plaintiff's constitutional rights while Plaintiff was under the care and protection of the Baltimore City Detention Center (the "BCDC") in July 2006. However, there is no mention of "Bloods" gang in the Second Amended Complaint. *See* Second Amended Complaint Exhibit 1.

McFadden's attempt at persuading this court with a misleading statement in his Opposition is not supported by record evidence. Indeed, McFadden claims that CO Allison violated his due process rights by opening the gate for the purpose of allowing his assailants to enter his cell and attack him. Plaintiff's Second Amended Complaint, ¶¶ 12-13, 15, 22. He also claims that CO Allison orchestrated the attack in retaliation to the verbal altercation that took place between her and McFadden the previous day. *Id.* at ¶¶ 18-19.

McFadden further claims that CO Allison took no effort to provide him with medical treatment for the injuries he sustained. *Id.* at ¶ 23. None of these allegations is supported by any evidence. For the reasons stated below, as well as in her Memorandum of Law in Support of her Motion for Summary Judgment, which is hereby incorporated by reference, Defendant respectfully request that the Court reject Plaintiff's invitation to deny her Motion and, instead, grant her Motion for Summary Judgment.

## II. Standards of Review:

The standard of review for Defendant's motion for summary judgment is well settled and needs little discussion. Pursuant to Fed. R. Civ. Proc. 56(c), summary judgment against any claim in the complaint is appropriate where there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en

banc). When ruling on a motion for summary judgment, this Court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995). However, in order to defeat a properly supported motion for summary judgment, an opposing party who bears the burden of proof on a particular claim must factually support each element of that claim. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

**III. Argument:**

    **a. CO Allison is entitled to summary judgment because McFadden can not factually support each element of his claim.**

McFadden claims that CO Allison orchestrated the attack in retaliation for the verbal altercation that occurred between them on July 4, 2006, and that she knew the assailants. Plaintiff's Second Amended Complaint ¶¶ 18-19. However it is undisputed that McFadden can not demonstrate with <u>any</u> degree of certainty that CO Allison caused his cell door to be opened prior to the attack. McFadden's Deposition 50:7-11 Exhibit 2. In fact, CO Allison denies having opened the tier gate to McFadden's cell door to allow anyone to attack him. Co Allison's Deposition 95:21-22, 96:3-9 Exhibit 3.

In his Opposition, McFadden pointed to Lt. Morales' deposition to support his contention that the "Keys for housing unit doors [are] interchangeable but not for lock boxes". However, McFadden neglected to mention that after Lt. Morales' deposition, he presented an Affidavit clarifying his statement regarding the key to the lock box. Lt. Morales stated:

> "On February 25, 2009, I gave a deposition in the above referenced matter. At the deposition, counsel asked whether somebody who had a key to the N Section also be able to control the box in the O Section. In response, I stated 'Not the lock box'. Upon further reflection, I recall to memory that the lock box keys were interchangeable and could have opened the lock boxes on both N and O Sections."

Santiago Morales' Affidavit, Exhibit 4.

In spite of McFadden's contention that the testimony regarding the key to the lock box is not consistent, the testimony from Assistant Warden Bartee, CO Crew and Lt. Morales are consistent in that in 2006 the lock box keys were interchangeable and any Correctional officer on N Section could have opened the lock box on O Section.

McFadden appears to argue that since his tier was locked there was only one way that he could have been attacked, which was for a correctional officer to open his cell door. However, when inmates are locked down in their tiers they could get stabbed by their cell buddy. CO Crew Deposition 52:14-17 Exhibit 5. At the time of the incident, McFadden did have a cell buddy who is now deceased.

4

Moreover, Kearson, McFadden's only witness, did not see the attack on McFadden. The only time Kearson saw CO Allison was when she first came on the tier. He didn't even see CO Allison when he and McFadden's cell buddy took McFadden to the showers. Kearson's Deposition at 31:3-13 Exhibit 7. This is despite the fact that Kearson and McFadden were in the shower at the same time, when McFadden claims to have seen CO Allison at the lock box. Clearly, Kearson's deposition testimony does not support McFadden's contention that CO Allison caused the attack on McFadden.

McFadden also asserts that CO Allison is a Bloods gang member. The implication is that Co Allison's affiliation with the Bloods is the reason for his attack. The only thing close to supporting McFadden's assertion that CO Allison is a Bloods gang member is a written statement by Aaron White, who is a Bloods gang member. In his statement, White made the bald allegation that CO Allison "is a know CO to philate [sic] herself with the Blood organization." Santiago Morales' Affidavit (attachment) Exhibit 4. White further alleged that Allison had "pop the cell [sic]" of an inmate named "Ishmal" to enable the Bloods to attack him. *Id.* However, there is no record evidence that White witnessed the attack. As a result of White's statement, Lt. Morales conducted an investigation to confirm whether CO Allison was in fact a Bloods gang member. With the exception of White's statement, the record is devoid of any other evidence positively identifying CO Allison as a Bloods gang member.

Furthermore, even if CO Allison was affiliated with the Bloods, it is not proof that she orchestrated the July 5, 2006 attack on McFadden. It is interesting to note that when after he was transferred to the Department of Corrections, McFadden joined the Bloods. McFadden's Deposition 33:7-10. However, CO Allison states that she is not, and has never been, affiliated with a gang, and did not know the identity of McFadden's assailants. CO Allison's Deposition 48:11-16, 95:21-22, 96:1-3.

**b.  CO Allison is entitled to qualified immunity.**

CO Allison is entitled to summary judgment on the basis of qualified immunity because the evidence has established that she did not know that McFadden was attacked let alone that he was injured. Therefore she could not have violated any clearly established constitutional right of which a reasonable public official should have known.

In this case, Co Allison did not witness the attack on McFadden, and had no knowledge or reason to believe that an attack was imminent. In this circumstance, the qualified immunity defense is appropriate. Indeed, even in circumstances where correctional officers, *witness* an attack on an inmate but do not act immediately to halt the attack, qualified immunity may be appropriate. *See Bass*, 106 F.3d at 535 (holding that unarmed correctional officer would not be "deliberately indifferent to an inmate's need for safety if, during an attack by a prisoner armed with a dangerous weapon upon another prisoner, the official instantly mobilized to take control of the situation but failed to intervene immediately").

6

McFadden cannot, demonstrate that "in light of the pre-existing law, the unlawfulness of the official action was apparent." *Bryant,* 994 F.2d at 1086, (citing *Mitchell v. Rice,* 954 F.2d 187, 190 (4th Cir.), cert. denied, 506 U.S. 905, 113 S.Ct. 299 (1992)). The fact is, McFadden cannot show that CO Allison <u>personally</u> caused his attack, which he must do in order to support a § 1983 claim. *Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990). Accordingly, CO Allison is entitled to qualified immunity.

## IV. Conclusion:

For the foregoing reasons, Defendant respectfully request that summary judgment be entered in her favor.

Respectfully submitted,

DOUGLAS F. GANSLER.
Attorney General of Maryland

_____/s/_____
BEVERLY F. HUGHES
Bar No. 11807
Assistant Attorney General
Division of Correction
6776 Reisterstown Road, Suite 313
Baltimore, Maryland 21215-2341
(410) 585-3082
bhughes@oag.state.md.us

Attorneys for Defendant, Antonia Allison