IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TASHMA MCFADDEN,
#337321

    Plaintiff,

    v.                     CIVIL NO.: WDQ-08-0154

CORRECTIONAL OFFICER ANTONIA
ALLISON, *in her individual
and official capacities*,

    Defendant.

MEMORANDUM OPINION

Tashma McFadden alleges that while in pretrial custody at the Baltimore City Detention Center ("BCDC"), Correctional Officer Antonia Allison opened his cell and allowed a group of inmates to assault him. Pending is Allison's Motion for Summary Judgment. For the following reasons, the motion will be denied.

I. Background

On July 4, 2006, McFadden and Allison argued after McFadden made a derogatory remark as Allison walked past his cell on the "O Tier" of the BCDC.[1] Allison Dep. 46:1-4, Apr. 30, 2009;

---

[1] For this motion, the facts are viewed in the light most favorable to McFadden. *See Winfield v. Bass*, 106 F.3d 525, 535 (4th Cir. 1997) (*en banc*).

1

McFadden Dep. 20:4-6, 25:1-19, Mar. 5, 2009. McFadden's cell was on the bottom of the O Tier.  McFadden Dep. 46:15.

On July 5, 2006, while McFadden was out of his cell for recreation, several inmates from other tiers asked him about his argument with Allison.  McFadden Dep. 43:4-17.  Referring to Allison as their "sister," they warned McFadden not to speak to her in the future.  McFadden Dep. 43:8-13.

After returning to his cell, McFadden was approached by Dashawn Kearson, an O Tier inmate on work duty.  McFadden Dep. 44:6-10; Kearson Dep. 11:7-12:17, Mar. 5, 2009.  Kearson told McFadden that he had seen Allison relieve the officer on duty in the O Tier.[2]  McFadden Dep. 44:3-10; Kearson Dep. 29:1-4.  After speaking with McFadden, Kearson went to clean the O Tier recreation hall.  Kearson Dep. 12:16-17.

---

[2] Allison had returned to the O Tier at around 6:39 p.m. on July 5.  Allison Dep. 60:15-22.  She was accompanied by trainee officer Tynisha Crew (née Berman), who was "shadowing" Allison that day.  Allison Dep. 57:12-13, 58:21-59:1.

When Allison and Crew arrived, inmates housed on the top level were out of their cells for recreation, while the inmates on the bottom level, including McFadden, were locked in their cells.  Allison Dep. 60:14; McFadden Dep. 46:10-19.  Allison and Crew inspected the bottom level to ensure that all detainees were present, and their cells were locked.  Allison Dep. 65:19-66:20.  Allison does not recall seeing McFadden in his cell. Allison Dep. 66:9-13.

2

While there, he noticed a group of inmates outside McFadden's cell. Kearson Dep. 12:19-21. McFadden also saw a group of inmates enter the bottom level and stand outside his cell. McFadden Dep. 44:22-45:2. Another group arrived shortly thereafter and stood on the other side of the cell. McFadden Dep. 45:2-5.

About five minutes later, McFadden's cell door was opened. McFadden Dep. 45:6-16. McFadden alleges that Allison "opened or . . . caused to be opened" his cell door "for the purpose of allowing approximately nine" inmates to enter his cell. Second Am. Compl. ¶¶ 12, 13; McFadden Dep. 167:22-169:12. Knowing that the assailants had come for him, McFadden pushed his cell mate, Ronald, out of the cell just before McFadden was attacked by eight or nine men, three of whom had knives.[3] McFadden Dep. 45:17-21. McFadden alleges that these inmates beat him unconscious and stabbed him 32 times. McFadden Dep. 62:18-22. Kearson saw Ronald leave McFadden's cell and spoke to him during the attack. Kearson Dep. 12:22-13:2. After the attack, Kearson and Ronald returned to McFadden's cell. Kearson Dep. 12:22-13:6. Finding McFadden stabbed, they helped him to the shower to clean up. Kearson Dep. 13:6-10; McFadden Dep. 56:15-19.

---

[3] Ronald's last name does not appear in the record. According to Allison, he is dead. Def.'s Reply 4.

McFadden was not able to identify the attackers because they had come from another tier. McFadden Dep. 20:15-20.

McFadden saw Allison while he was in the shower,[4] McFadden Dep. 56:19-20, but he did not tell her about the attack or ask for medical attention, McFadden Dep. 57:4-5. McFadden did not seek medical attention until 12 days later; he allowed another inmate to stitch his most severe wound, and McFadden bandaged the others with toilet paper, tape and gauze. McFadden Dep. 57:1-2; 61:5-8. McFadden delayed reporting the incident out of fear of retaliation by Allison. McFadden Dep. 58:2-10.

Allison and Crew deny opening McFadden's cell, Allison Dep. 67:11-16; Crew Dep. 66:13-17, or seeing McFadden that evening, Allison Dep. 66:9-13; Crew Dep. 10-12. The officers concede that if a cell door was opened during their shift, it had to have been opened by one of them. Allison Dep. 67:17-68:7; Crew Dep. 73:18-80:2.

Kenneth Bartee, Chief of Security at the BCDC during the alleged attack testified that the only officers who could have opened McFadden's cell were Crew, Allison, or the duty officer on the N Tier. Bartee Dep. 96:4-97:6. Crew has testified that the officer working on the N Tier, Officer Emerenini did not

---

[4] The control room, where McFadden saw Allison, is visible from the shower, and the shower is visible from the control room. Allison Dep. 32:3-22.

come to the O Tier.  Crew Dep. 50:1-19.  Bartee also explained that a group of inmates should not have had access to the bottom level of the O Tier during Allison's shift.  Bartee Dep. 97:7-98:1.  He testified that the only way such inmates could have gained access was if the entrance to the tier was not secured or if an O or N Tier officer breached the security protocol. Bartee Dep. 97:7-17.

On January 17, 2008, McFadden sued Allison and the BCDC under 42 U.S.C. § 1983, alleging that Allison violated his constitutional rights by facilitating the attack and failing to provide medical treatment.  Paper No. 1.  On July 22, 2008, the Court appointed Aaron L. Casagrande, Esquire to represent McFadden.  Paper No. 23.  On September 4, 2008, McFadden filed an amended complaint, naming only Allison, in her individual and official capacities, as defendant.  Paper No. 26.  On July 6, 2009, McFadden filed a second amended complaint, increasing the *ad damnum*.  Paper No. 41.  On July 24, 2009, Allison moved for summary judgment.  Paper No. 43.

II. Analysis

    A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. McFadden's Claims

The Due Process Clause of the Fourteenth Amendment prohibits states from "punishing" pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 & n.16 (1979); *Parrish ex. rel. Lee v. Cleveland*, 372 F.3d 294, 302 & n.10 (4th Cir. 2004). McFadden's claims arose while he was in pretrial custody and appear to rely on three theories of liability.

First, the complaint alleges that the attack on McFadden constituted "punish[ment] without [McFadden's] having been convicted of a crime," Second Am. Compl. ¶ 30, and that Allison intentionally set the attack in motion for no purpose other than "the unnecessary and wanton infliction of pain," *id*. ¶ 21. Accordingly, McFadden has pled an "excessive force" claim. *See Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1997). Second, he alleges that Allison "though cognizant of the attack, made no effort to stop [it]." Second Am. Compl. ¶ 22. Accordingly, he has pled a "failure to protect" claim. *See Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994). Finally, the complaint alleges that Allison did not "request or provide medical treatment for Mr. McFadden despite her knowledge of the attack and the severe injuries sustained by Mr. McFadden." Second Am. Compl. ¶ 23. Accordingly, he has pled a denial of medical care claim. *See*

*Parrish ex. rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004).

Allison contends that she is entitled to summary judgment because McFadden has not shown a genuine issue of material fact. Alternatively, she argues that she is entitled to qualified immunity.

### 1. Excessive Force

McFadden's excessive force claim requires a showing that Allison "inflicted unnecessary and wanton pain and suffering" upon him. *Taylor*, 155 F.3d at 483. The Court examines "such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008).

McFadden alleges that Allison opened his cell door to facilitate a brutal attack by other inmates; he has thus alleged that force was applied "maliciously and sadistically for the very purpose of causing harm" rather than for legitimate disciplinary reasons.

The evidence is that McFadden and Allison argued on July 4, 2006; McFadden received warnings from fellow inmates the following day; inmates assembled outside McFadden's cell on the evening of the July 5, 2006—when, as Bartee testified, no inmates were supposed to be present on the bottom level of the O Tier; the attack occurred during Allison's shift; McFadden was able to leave his cell and go to the shower when his cell was supposed to have been locked; Allison, Crew, and Bartee acknowledge that if a cell door was opened during the attack, it had to have been opened by Allison, Crew or the N Tier officer; and Crew testified that Emerenini did not come to the O Tier. Thus, only Allison or Crew could have opened McFadden's cell.

On these facts a reasonable jury could find for McFadden on his excessive force claim. Accordingly, Allison's motion for summary judgment on this claim must be denied.

2. Failure to Protect & Denial of Medical Care

To succeed on his failure to protect and denial of medical care claims, McFadden must show Allison's "deliberate indifference" to a substantial risk of serious harm to him.[5] *See Parrish ex. rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir.

---

[5] This standard also applies to cases arising under the Eighth Amendment, when prison officials are accused of deliberate indifference to a substantial risk of serious harm to prison inmates. *Parrish*, 372 F.3d at 302 n.11.

2004). Deliberate indifference requires a showing that the defendant "actually knew of and disregarded a substantial risk of serious injury to the detainee or that [she] actually knew of and ignored a detainee's serious need for medical care." *Id.* (*quoting Young v. City of Mount Rainier*, 238 F.3d 567, 575 (4th Cir. 2001)).

McFadden must first demonstrate that Allison "subjectively recognized a substantial risk of harm to him." *Id*. "It is not enough that [she] *should have* recognized [the risk]; [she] must have perceived [it]." *Id*. (emphasis in original). He must also show that Allison "subjectively recognized that her actions were inappropriate in light of that risk." *Id*. "Although the deliberate indifference standard requires a showing of actual knowledge as to both elements, it 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Id*. (*quoting Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

As explained above, there are facts from which a reasonable jury could infer that Allison "sadistically and maliciously" directed the attack against McFadden. These facts would also permit a reasonable jury to conclude that she subjectively recognized that McFadden was at risk of harm and that he would

need medical attention after the attack.  Accordingly, Allison's motion for summary judgment on these claims will be denied.

C. Qualified Immunity

Allison next argues that she is entitled to qualified immunity.  Law enforcement officers are entitled to qualified immunity when their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When evaluating a qualified immunity claim, the Court first considers whether the facts alleged or shown, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right.  *See Saucier v. Katz*, 333 U.S. 194, 200-01 (2001).  If the Court finds a violation, then it must determine whether the right was "clearly established at the time of the violation." *Id*.  A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

As explained above, there are genuine issues of material fact about McFadden's excessive force, failure to protect, and denial of medical care claims.  The remaining question is

whether these rights were clearly established at the time of the alleged violations.

A pretrial detainee's Fourteenth Amendment right to be free from excessive force was clearly established as of the July 5, 2006 attack.[6] So too were the rights to be free from prison officials' deliberate indifference to serious medical needs and assaults by other inmates.[7] A reasonable correctional officer would have understood that facilitating an attack against an inmate violates these rights.

Accordingly, Allison is not entitled to summary judgment on the basis of qualified immunity.

---

[6] *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Simms v. Hardesty*, 303 F. Supp. 2d 656, 669 (D. Md. 2003).

[7] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)(deliberate indifference to serious medical needs violates the Eighth Amendment); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (the Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners); *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (a pretrial detainee's due process rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner").

III. Conclusion

For the reasons stated above, Allison's motion for summary judgment will be denied.


October 9, 2009                        _____/s/_____
Date                                   William D. Quarles, Jr.
                                       United States District Judge